IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| TINA L. ENGLAND, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 1:05-0520 |
| | ) |
| JO ANNE BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to the undersigned United states Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Motion for Summary Judgment (Document No. 13.) and Defendant's Brief in Support of Brief in Support of Judgment on the Pleadings (Document No. 15.).

The Plaintiff, Tina L. England (hereinafter referred to as "Claimant"), filed an application for SSI on September 24, 2001, alleging disability as of December 1, 1998, due to systemic lupus high blood pressure and pain in her neck and shoulders causing numbness in hands, arms and legs. (Tr. at 97 - 99, 104, 109, 143.) The claim was denied initially and upon reconsideration. (Tr. at 75 - 77, 82 - 84.) On April 25, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 85.) The hearing was held on November 18, 2002, before the Honorable John Murdock. (Tr. at 427 - 469.) By Decision dated April 23, 2003, ALJ Murdock determined that

Claimant was not entitled to benefits. (Tr. at 19 - 31.) On May 18, 2005, the Appeals Council denied Claimant's request for review. (Tr. at 6 - 8.) Claimant filed a Complaint in this Court on June 28, 2005, seeking judicial review of the Commissioner's decision. (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (1999). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings,ের effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area

3

>(episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06, provides essentially the same framework for determining the severity of anxiety related disorders.

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 30, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from lupus, fibromyalgia and rheumatoid arthritis which he deemed severe impairments.[2] (Tr. at 20 and 30, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 30, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for a limited range of light work. (Tr. at 30, Finding No. 6.) The ALJ found that Claimant had no past relevant work, was a younger individual and had a high school education. (Tr. at 30, Finding Nos. 7 - 9.) Nevertheless, the ALJ concluded on the basis of vocational expert testimony at the administrative hearing that Claimant could perform jobs such as bench assembler, mail room clerk and file clerk which existed in significant numbers in the national and regional economy. (Tr. at 30 - 31, Finding No. 11.) On this basis, benefits were denied. (Tr. at 31.)

---

[2] ALJ Murdock found that Claimant's high blood pressure, gastroesophageal reflux disease and hiatal hernia, sinus problems, bronchitis and chronic obstructive pulmonary disease, chest pain and mental impairments were non-severe and her hearing problems and high cholesterol were not medically confirmed. (Tr. at 22 - 24.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on October 11, 1961, and was 41 years old at the time of the administrative hearing on November 18, 2002. (Tr. at 97, 149, 437.) Claimant has a high school education. (Tr. at 115, 437.) In the past, she worked as an admission clerk at a hospital, an assistant cook and stocker. (Tr. at 110, 144, 439 - 440.)

The Medical Record

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in evaluating Claimant's mental impairment and determining that it was not severe. (Document No. 14, p. 10.) Second, Claimant states that "by failing to adequately consider the plaintiff's mental impairments, the ALJ failed to properly consider the combined effect of all the plaintiff's impairments on her ability to work." (Id., p. 13.) Claimant contends that "regardless of whether the ALJ considered the [Claimant's] mental impairments to be severe or nonsevere, he was required to consider their effects, both singularly and in combination, on her ability to perform work." (Id., p. 14.) Third, Claimant asserts that the ALJ erred in failing to give proper weight to the opinions of Claimant's treating physicians, Dr. Graham, Dr. Elsarrag and Dr. Riaz, and substituted his own opinions for the opinions of Claimant's examining and treating physicians. (Id., pp. 14 and 16.) Finally, Claimant contends that the Commissioner failed at step five of the sequential analysis to meet her burden of proving that work existed in the national economy which Plaintiff could perform. (Id., p. 17.) The Commissioner asserts that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff was capable of performing the light work identified by the VE . . .." (Document No. 15, p. 11.) The Commissioner contends that the ALJ's determination that Claimant's mental impairment was not severe is supported by substantial evidence and the ALJ considered and gave weight to the opinions of Claimant's treating physicians in accordance with the applicable Regulations. (Id., pp. 14 - 16.)

## ANALYSIS

### I. Claimant's Mental Impairments

Plaintiff references (1) the August 28, 2001, diagnosis of Dr. Graham of situational depression, (2) the Adult Mental Profile of William C. Steinhoff, Jr., M.A., indicating, among other

7

things, the results of psychological testing on January 3, 2002, (3) the diagnosis of Dr. Hirsch of depression and prescription of Effexor and Zoloft, (4) Dr. Ahmad's diagnosis of sleep disturbance, low energy, anxiety and depression in 2002, (5) Dr. Riaz' treatment and assessment of Claimant's ability to function mentally and (6) Dr. Faheem's findings in April, 2004, based upon psychological testing respecting the severity of Claimant's impairments and her ability to function mentally. (Document No. 14, pp. 11 - 12.)

It appears that Dr. A. W. Graham was the first to diagnose Claimant's depression. Dr. Graham examined Claimant and by report dated August 28, 2001, diagnosed depression secondary to pain and situational depression. It appears that Dr. Graham referred Claimant for a rheumatological exam. (Tr. at 266 - 267.)[3] Dr. Wassim Saikali examined Claimant on December 12, 2001, on Dr. Elsarrag's referral and diagnosed depression. Dr. Saikali indicates that he prescribed Prozac. (Tr. at 269.) Mr. William C. Steinhoff, Jr., M.A., conducted a psychological evaluation of Claimant on January 3, 2002. (Tr. at 280 - 285.) Mr. Steinhoff diagnosed depressive disorder, NOS, postraumatic stress disorder, chronic, and pain disorder associated with both psychological and medical condition. (Tr. at 284.) Mr. Steinhoff found that Claimant performed her own personal care on a daily basis; her social interactions were mildly limited; her concentration, persistence and pace were mildly limited and slow; and her recent memory was moderately deficient. (Tr. at 285.) On January 22, 2002, Dr. Clark, a DDS physician, prepared a Psychiatric Review Technique form indicating that Claimant suffered from a non-severe depressive disorder. (Tr. at 306, 309.) Dr. Clark indicated that Claimant had anxiety evidenced by recurrent recollections of a traumatic disturbance

---

[3] Dr. Zaki Elsarrag saw Claimant at the Welch Community Hospital in July, 2001, diagnosed fibromyalgia and hypertension and recommended a rheumatological consultative exam in July, 2001. (Tr. at 251 - 254.) It does not appear that Dr. Elsbarrag considered Claimant's mental status.

(Tr. at 311.) and a pain disorder associated with both psychological factors and a general medical condition (Tr. at 312.) Dr. Clark determined that as a consequence of her non-severe impairment Claimant had mild restrictions of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and had no episodes of decompensation. (Tr. at 316.) Dr. Bender, also a DDS physician, noted on April 18, 2002, that he examined all of the evidence in the file and affirmed Dr. Clark's opinions. (Tr. at 306.) Dr. Syed M. Ahmad, an internal medicine and rheumatology specialist, saw Claimant for a consultative examination in May, 2002, and noted Claimant's history of anxiety and depression, among other things, and prescribed Zoloft. (Tr. at 335 - 337.) On Dr. Ahmad's referral, Claimant had a psychological evaluation in June, 2002. (Tr. at 381 - 382.) Dr. Riaz Riaz conducted a psychiatric evaluation of Claimant on July 10, 2002. Dr. Riaz diagnosed "[m]ajor depression, moderately severe, chronic" and "[g]eneralized anxiety disorder, moderate, chronic." Dr. Riaz concluded that Claimant "has a combination of emotional and physical problems which makes her incapable of gainful employment. She will be unable to interact appropriately with her co-workers and supervisors. She will be unable to perform routine repetitive tasks at a sustained level. She is not a suitable candidate for vocational rehabilitation services." (Tr. at 376 - 378.) Dr. Riaz continued Claimant on Zoloft. It appears from the record (Tr. at 369 - 382.) that Dr. Riaz and his counselor, Ms. Amy Moler, treated Claimant through November 25, 2002, when he completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (Tr. at 369 - 371.) Dr. Riaz stated that Claimant had poor to no ability in any respect related to making occupational adjustments including the ability to follow work rules, relate to co-workers, deal with the public, use judgment with the public, interact with supervisors deal with work stresses, function independently and maintain attention and concentration. He further stated that Claimant had poor to no ability to understand, remember and carry out complex

9

job instructions; detailed, but not complex, job instructions; or simple job instructions. He stated that Claimant had poor to no ability to behave in an emotionally stable manner and relate predictably in social situations and fair ability to maintain personal appearance.[4]

Documents submitted after the ALJ's decision and while the case was pending on Claimant's request for review before the Appeals Council indicate that Claimant began treatment with Dr. Ahmed Faheem, a psychiatrist, in December, 2003.[5] (Tr. at 389.) The record contains Dr. Faheem's December 18, psychiatric evaluation in which he concluded that Claimant suffered from depression and an anxiety disorder and assessed her on the GAF Scale at 55.[6] (Tr. at 386 - 387.)

---

[4] Dr. Riaz completed the Assessment on November 25, 2002, shortly after the November 18, 2002, hearing.

[5] Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in *Wilkins v. Secretary, Dept. of Health and Human Serv.*, 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*), that Courts reviewing decisions of the Social Security Administration must consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for review. *See also Adkins v. Barnhart*, 2003 WL 21105103, * 5 (S.D.W.Va.)(Stanley, M.J.)

[6] The DSM-IV Multiaxial Assessment Diagnosis consists of the following:

Axis I: Clinical Disorders
Axis II: Personality Disorders and Mental Retardation
Axis III: General Medical Conditions
Axis IV: Psychosocial and Environmental Problems
Axis V: Global Assessment of Functioning (GAF)

The Global Assessment of Functioning Scale is a system used by clinicians to indicate their overall judgment of psychological, social and occupational functioning. It is therefore a system for measuring the overall severity of psychiatric disturbances. The GAF Scale runs from 100 (no symptoms and superior functioning in a wide range of activities) to 0 (persistent danger of severely hurting self or others and inability to maintain minimal personal hygiene). A GAF score between 51 and 60 indicates the following symptom severity and level of functioning: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or some difficulty in social, occupational or school functioning (e.g., few friends, conflicts with co-workers).

Claimant had psychological testing on February 13, 2004. (Tr. at 390 - 392.) Claimant was found to be in the borderline to average range of intellectual functioning and "[s]elf-reported symptoms of anxiety and depression were in the [s]evere [r]ange." (Tr. at 392.). Dr. Faheem completed a Medical Assessment of Ability to do Work-Related Activities (Mental) in April, 2004. (Tr. at 383 - 385.) Dr. Faheem stated that Claimant had poor to no ability to relate to co-workers, interact with supervisors or deal with work stresses; fair ability to follow work rules, deal with the public, use judgment with the public and maintain attention and concentration; and good ability to function independently. He further stated that Claimant had poor to no ability to understand, remember and carry out complex job instructions; fair ability respecting detailed, but not complex, job instructions; and good ability respecting simple job instructions. He stated that Claimant had fair ability to behave in an emotionally stable manner and relate predictably in social situations and good ability to maintain personal appearance.

     The ALJ summarized information as it is contained in treatment notes of Dr. Riaz and his associate, Ms. Molers, and Mr. Steinhoff's findings. (Tr. at 23.) The ALJ did not state that the evidence indicated that Claimant had a medically determinable mental impairment, but it can be inferred that he made this finding because he engaged in an analysis rating the degree of her functional limitations in the areas prescribed in the Regulations as set forth above. (Tr. at 23 - 24.) The ALJ stated that "[a]n examination of the claimant's 'B' criteria persuades me her mental impairments are not severe." (Tr. at 23.) He found from the record as he had it that Claimant had no limitations of daily activities and in social functioning; mild limitations in concentration, persistence and pace; and no episodes of decompensation. (Id.) The ALJ considered Dr. Riaz' opinions respecting Claimant's limitations as contained in his evaluation and the November 25, 2002, Assessment and rejected them because Dr. Riaz had examined Claimant only one time and his

11

opinions were not supported by statements Claimant made to Mr. Steinhoff and Dr. Riaz about her activities.[7] (Tr. at 27.)

The undersigned finds that the ALJ's decision respecting the severity of Claimant's mental impairment is in conformity with applicable law and Regulations and supported by substantial evidence in the record as the ALJ had it. It is certainly evident that Claimant suffered from a mental impairment as it would appear the ALJ found, but the record as a whole, excepting Dr. Riaz' Assessment, does not indicate that Claimant's impairment results in marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation. The ALJ clearly indicated why he rejected Dr. Riaz' assessment of Claimant's limitations accurately citing Claimant's reports of her activities and Mr. Steinhoff's findings. The undersigned finds that the record as the ALJ had it indicated no more than mild limitations under the "B" criteria. Dr. Riaz' opinions respecting Claimant's limitations were inconsistent with and not supported by the record as a whole. Consequently, the ALJ properly concluded on the basis of the record as he had it that Claimant's mental impairment was not severe. It further does not appear that the ALJ's decision respecting the severity of Claimant's mental impairment would be different in consideration of Dr. Faheem's opinions as Dr. Faheem found generally that Claimant exhibited moderate symptoms. Dr. Faheem's Assessment, however, is clearly consistent with and supportive of some, but certainly not all, of Dr. Riaz' findings respecting Claimant's limitations.

---

[7] It is reported in a Progress Note dated August 12, 2002, made while Dr. Riaz was treating Claimant that Claimant had not experienced a panic attack for about two and a half weeks and was feeling less depressed. (Tr. at 374.)

**II. Claimant's Residual Functional Capacity**

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2002). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). The Regulations specifically direct the ALJ to consider limitations related to both severe and non-severe impairments:

> When you have a severe impairment(s), but your symptoms, signs and laboratory findings do not meet or equal those of a listed impairment in Appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining you residual functional capacity.

20 C.F.R. § 404.1545(e).

13

The ALJ totally rejected Dr. Riaz' opinions and concluded based on the record as he had it that "claimant's depression and generalized anxiety disorder result in no work-related limitations." (Tr. at 27.) This conclusion is not supported by substantial evidence of record. Mr. Steinhoff found that Claimant performed her own personal care on a daily basis; her social interactions were mildly limited; her concentration, persistence and pace were mildly limited and slow; and her recent memory was moderately deficient. (Tr. at 285.) DDS physicians Dr. Clark determined and Dr. Bender affirmed that as a consequence of her non-severe impairment Claimant had mild restrictions of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and had no episodes of decompensation. (Tr. at 316.) This evidence indicates that Claimant experiences limitations which might impact her ability to engage in gainful employment. Dr. Faheem's findings are further evidence of this. The ALJ concluded that Claimant had mild limitations in concentration, persistence or pace. All of this evidence stands contrary to the ALJ's conclusion that Claimant had "no work-related limitations" as a consequence of her non-severe mental impairment. For this reason, the undersigned finds and hereby respectfully recommends that the Commissioner's decision be vacated and this matter be remanded for further consideration of what, if any, limitations Claimant experiences as a consequence of her non-severe mental impairment in view of all of the evidence of record including the documents pertaining to Claimant's treatment with Dr. Faheem and Dr. Faheem's Assessment.

### III.    Opinions of Treating Physicians

Claimant contends that the ALJ "erred in failing to accord proper weight to the . . . opinions of the [Claimant's] treating physicians, Dr. Graham, Dr. Elsarrag and Dr. Riaz[.]" (Document No. 14, p. 14.) Claimant states that each of these doctors opined that she was unable to work because of her physical and mental conditions. (Id.)

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating sources than to those of examining and non-examining sources. 20 C.F.R. § 1527. As between the opinions of examining and non-examining sources, the ALJ will generally give more weight to the opinion of examining sources. 20 C.F.R. § 404.1527(d)(1). If the ALJ determines that a treating source's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinions." Id. § 404.1527(d)(2). The Regulations further provide that weight is accorded to medical opinions which are supported by and consistent with the record as a whole. 20 C.F.R. § 1527(d)(3) and (4) provide:

> (3) *Supportability*. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> (4) *Consistency*. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

The Regulations provide that ultimately the decision regarding disability is for the Commissioner:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to

15

work" does not mean that we will determine that your are disabled.

See 20 C.F.R. § 404.1527(e)(1)(2001.) Social Security Ruling 96-5p (1996) states that while opinions on disability or issues reserved to the Commissioner must never be ignored, they are still not given controlling weight.

The ALJ noted Dr. Graham's opinion that Claimant was unable to work (Tr. at 26.) and Dr. Riaz' opinion that Claimant's physical and emotional impairments made her incapable of gainful employment (Tr. at 27.) and rejected them. Because ultimately under applicable law and Regulations it is the responsibility of the Commissioner to determine if Claimant is disabled and qualifies for benefits under the Social Security Act, the ALJ properly considered the physician's opinions and chose to reject them. The undersigned therefore finds no error in the ALJ's decision in this regard as Claimant alleges.

## IV.     Commissioner's Step Five Analysis

Claimant asserts as follows respecting the ALJ's step five analysis:

> In determining there is other work the [Claimant] can perform, the VE testimony relied upon by the ALJ was not in response to a hypothetical question which fairly set forth all of the claimant's impairments and limitations. The ALJ asked the VE to consider 'a person capable of a limited range of light work, limited in these ways: the position should allow a sit stand option and should avoid extreme cold.' (Tr. 462). However, this question failed to include the plaintiff's severe mental impairment. Nor did it consider the records or opinion of the [Claimant's] treating psychiatrist, Dr. Riaz, as these records were received by the ALJ after the oral hearing and VE testimony. As such, the Commissioner has failed to satisfy her burden of establishing that there is other work the plaintiff can perform, warranting reversal of this case.

(Document No. 14, p. 18.) The ALJ ask the vocational expert to consider hypothetical circumstances as follows:

> I'm going to give you one hypothetical question in this case. I'd like you to assume a person age 41, with a high school education. Further assume I find the person capable of a limited range of light work, limited these ways: The position should allow a sit stand option and should avoid extreme cold. * * * Anyway, now, there

16

> have been some allegations and some information provided about some emotional difficulty, depression and so forth. I don't find that – from the information that I've got – that that has vocational relevance, and I'm not going to give you any job limitations based on that.

(Tr. at 462 - 463.) The vocational expert listed jobs available in the national and regional economy which Claimant could perform. (Tr. at 463.) Claimant's attorney asked the vocational expert to makes the same assumptions as submitted by the ALJ and assume further that "the hypothetical individual suffers from a marked degree of pain, which would result in the inability to concentrate 25 percent of the time out of an eight-hour workday . . .." (Tr. at 466.) The vocational expert stated that he "would not identify jobs." (Id.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The evidence clearly indicated mild limitations in the Claimant's ability to maintain concentration, persistence and pace. Indeed, the ALJ found that Claimant had mild limitations in this area. (Tr. at 24.) As the ALJ was required to consider the limitations resulting from Claimant's non-

17

severe impairments in determining her RFC, he was also required to relate any limitations which he found in posing his hypothetical to the vocational expert. It appears from the vocational expert's response to Claimant's attorney's hypothetical that the extent of the difficulties which Claimant was found to have in maintaining concentration, persistence and pace might have a bearing upon whether jobs existed in the national and regional economy which she could perform. For this reason, the undersigned concludes that upon further consideration of the limitations which might be found to derive from Claimant's non-severe mental impairment in determining her RFC, the ALJ should submit his RFC findings once again to a vocational expert.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Judgment on the Pleadings, **VACATE** the final decision of the Commissioner, **REMAND** this matter for further consideration of what, if any, limitations Claimant experiences as a consequence of her non-severe mental impairment in view of all of the evidence of record including the documents pertaining to Claimant's treatment with Dr. Faheem and Dr. Faheem's Assessment and for further consideration at step five of the sequential analysis and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions

of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: June 28, 2006.

R. Clarke VanDervort
United States Magistrate Judge